# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs March 1, 2011

## DEWAYNE JONES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-06157      John T. Fowlkes, Jr., Judge**

---

**No. W2010-00304-CCA-R3-PC   -   Filed June 8, 2011**

---

A Shelby County jury convicted the Petitioner, Dewayne Jones, of two counts of aggravated rape, and the trial court merged the convictions and sentenced him to twenty-two years as a Range I, violent offender.  This Court affirmed the Petitioners convictions on direct appeal.  The Petitioner filed a petition for post-conviction relief, which he later amended, and, after a hearing, the post-conviction court denied relief.  The Petitioner now appeals, claiming the post-conviction court erred when it denied his petition for post-conviction relief because he received the ineffective assistance of counsel.  After a thorough review of the record and relevant authorities, we conclude the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief.  As such, we affirm its judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Errol Harmon, Memphis, Tennessee, for the Appellant, Dewayne Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarentz E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Garland Erguden, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Trial

On direct appeal, this Court summarized the facts underlying this case as follows:

The victim, S.S., testified that in May 2003 she lived in DeSoto County, Mississippi, with her mother and worked as a waitress at a restaurant on Beale Street in Memphis. On May 5, 2003, S.S. called and asked the [Petitioner], whom she had met about six weeks earlier, for a ride home from work when her shift ended at 10:00 p.m. S.S. said she had accepted rides from the [Petitioner] on three occasions before May 5 but had not dated or had sex with him. The [Petitioner], driving a white Grand Marquis, picked up S.S. promptly at 10:00 p.m. Rather than take her directly home, he made a few stops before driving to a park on Third Street in Memphis, where they kissed briefly. S.S. asked the [Petitioner] to stop because she did not want their encounter to lead to sex. The [Petitioner] then sped out of the park and turned into an apartment complex on Third Street. S.S. became frightened because the [Petitioner] was driving erratically, and she called her mother. When her mother answered, the [Petitioner] took the phone from S.S., ended the call, and punched her in the face. Her mother immediately called back, and the [Petitioner] hit S.S. in the face twice more as she attempted to reclaim her phone. When her mother called again, the [Petitioner] answered and told her that S.S. was "okay" and that he was going to bring her home. The [Petitioner] then drove out of the apartment complex, through a gas station parking lot, and back to the park on Third Street where he repeatedly struck S.S. in the head with a black metal flashlight. S.S. attempted to run from the vehicle, but the [Petitioner] caught her, knocked her down, and dragged her back to the car by her hair. He forced her to remove her clothes and placed them in the trunk of the car. They left the park and went to another gas station where the [Petitioner] exited the car, entered the gas station briefly, and returned before the victim could escape. The [Petitioner] next drove to a third gas station, pumped gas, and entered the store. The victim managed to get out of the car and tried to escape, but the [Petitioner] forced her to return to the car.

After departing the third gas station, the [Petitioner] drove the victim to a vacant lot on Holmes Road near Riverdale Road in Memphis. He ordered her to position herself in the car, unfastened his belt, and penetrated the victim digitally. At that time, a passing car slowed down as it neared the [Petitioner]'s car which apparently unnerved the [Petitioner], because he drove off and pulled into an adjacent lot. There, he choked the victim and penetrated her with his penis, once while wearing a condom and again without a condom. Afterwards, the [Petitioner] gave the victim her clothes from the trunk and told her he should kill her. The [Petitioner] drove the victim home, and her mother called the police who escorted the victim to Methodist Hospital-Germantown and the Memphis Sexual Assault Resource Center for treatment and testing.

2

The victim said that her jaw and lip were swollen.

On cross-examination, S.S. admitted that the reason she initially exchanged phone numbers with the [Petitioner] was so she could purchase marijuana from him. Asked if she recalled saying that the sexual assault took place "on Holmes Road-which is Olive Branch-in De[S]oto County," S.S. replied in the affirmative. However, on redirect examination, S.S. reaffirmed that the rape took place on Holmes Road and said she understood that Holmes Road and the other locations she described in her direct testimony were in Shelby County, Tennessee.

The victim's mother, A.S., testified that in May 2003 she and the victim lived on Stateline Road in Olive Branch, Mississippi. She said that the victim called her around 9:30 p.m. on May 5, 2003, and said she was leaving work and would be home shortly. When the victim did not arrive home, A.S. called her and could hear a "tremble" in her voice, but the victim told her she was on her way home. After waiting "some time," A.S. called the victim again. A man answered and told A.S. that he had the victim and was going to bring her home, but he would not allow A.S. to speak to the victim. She called the victim's phone several more times, but no one answered. She said that when the victim arrived home, she was bloody and bruised and said she had been raped. A.S. testified that the victim told the police that she was raped on Holmes Road and beaten several times with a flashlight on Third Street. A.S. never heard the victim tell anyone that the rape occurred anywhere other than Holmes Road. A.S. said that the victim had a broken jaw, "knots all upside her head . . . hair pulled out in the top, just in a plug, just taken out, and her face was just swollen."

Shelby County Deputy Sheriff James Peterson testified that he responded to a call at Methodist Hospital-Germantown to investigate a criminal assault at around 2:30 a.m. on May 6, 2003. He met with the victim and observed that her face and chin were swollen and that she appeared to experience discomfort as she walked and to be in shock. The victim told Deputy Peterson that a man named Dewayne picked her up from work, drove her to a park off Third Street, attempted to rape her, beat her with a flashlight when she attempted to flee his vehicle, drug her back to the vehicle and raped her, and drove her to several more locations, including one near the intersection of Riverdale and Holmes Roads where he raped her again. Deputy Peterson testified that Holmes Road runs parallel to Stateline Road, the two roads are separated by approximately one-quarter mile, and no part of Holmes

3

Road is in Mississippi. He said that each of the locations the victim described to him, including where she was raped, was in Shelby County.

Rachell Copeland, the acting coordinator of nursing services and a forensic nurse examiner at the Memphis Sexual Assault Resource Center, testified that she examined the victim on the morning of May 6, 2003. She said that the victim's injuries included right facial mandibular swelling, swelling to her chin and ear, bruising to her right eye, three knots on the back of her head, bruising on her lips and gum, and an abrasion on her left knee. She said that the victim appeared to be alert and oriented but had difficulty speaking because of her injuries. The victim told Copeland that she had accepted a ride from a black male named Dewayne, who beat her with a flashlight and his fist at a park near Third Street and raped her on Holmes Road near Riverdale Road. Copeland also collected vaginal swabs from the victim and observed sperm cells in the victim's vaginal vault.

Lieutenant Marjorie Anne Featherstone of the Shelby County Sheriff's Department interviewed the victim at the Memphis Sexual Assault Resource Center on May 6, 2003. She could tell the victim was injured, upset, and in great pain when she interviewed her. The victim told Lieutenant Featherstone that the [Petitioner] agreed to give her a ride home but, instead, took her to two parks near Third Street, beat her with his fists and a flashlight when she refused to have sex with him, made her undress and put her clothes in the trunk of his car, and took her to an apartment complex in East Memphis and locations on Riverdale Road and Holmes Road. Lieutenant Featherstone said that the locations the victim described were not searched because heavy rains, during and immediately following the incident, would have washed away most of the available evidence. She said that all of the locations the victim described were in Shelby County.

Dr. Qadriyyah Debnam of the Tennessee Bureau of Investigation ("TBI"), an expert in serology and DNA analysis, testified that she performed DNA testing on the vaginal swabs taken from the victim, which revealed the presence of sperm. She compared DNA from the sperm with DNA from a blood sample taken from the [Petitioner] and determined that the DNA from the sperm matched the [Petitioner]'s DNA. She testified that TBI Special Agent Scientist Donna Nelson verified her findings and that the probability of another human being having the same DNA as the [Petitioner] was less than one in six billion.

4

Markeitsha Allen, mother of the [Petitioner]'s child, was the only witness for the defense. She testified that she picked up the [Petitioner]'s car from the Memphis Police Department impound lot on May 26, 2003, the day after he was arrested. She saw no evidence of blood in the car when she picked it up. It appeared to her that someone had "gon[e] through" the car.

*State v. Dewayne Jones*, No. W2006-01026-CCA-R3-CD, 2007 WL 4245727, at *1 (Tenn. Crim. App., at Jackson, Dec. 3, 2007), *perm. app. denied* (Tenn. June 2, 2008). The Shelby County jury convicted the Petitioner of two counts of aggravated rape, which the trial court merged. The trial court conducted a sentencing hearing and, applying several enhancement factors but no mitigating factors, sentenced the Petitioner as a Range I offender convicted of a violent offense to twenty-two years in the Tennessee Department of Correction.

The Petitioner filed a direct appeal of his convictions and sentence, claiming, among other things, that the trial court misapplied enhancement factor (16) to his conviction. See T.C.A. § 40-35-114(16) (2003); *Jones*, 2007 WL 4245727, at *2. This Court rejected each of his assignments of error and specifically found, relative to his sentencing claim, that the trial court's application of enhancement factor (16), the abuse of a position of private trust, was in error but that this error was harmless because the remaining five enhancement factors it properly applied justified enhancement of the Petitioner's sentence. *Id*. at *8-9.

### B. Post-Conviction

The Petitioner filed a timely petition for post-conviction relief, and the post-conviction court appointed counsel, who filed several amendments to the Petitioner's petition. The final petition alleged that the Petitioner was entitled to post-conviction relief because his trial counsel was ineffective in several respects, the following three of which are relevant to this appeal:[1] (1) that trial counsel failed to lay a proper foundation for witness Markeitsha Allen to testify about prior statements made to her by the victim in this case; (2) that trial counsel failed to object to the introduction of the Petitioner's prior convictions; and (3) that trial counsel failed to claim on direct appeal that the trial court erred in its application of enhancement factors other than enhancement factor (16).

The post-conviction court held a hearing wherein the following evidence was presented: the Petitioner's trial counsel ("Counsel") testified that he represented the Petitioner at trial in the charges underlying this case. Reviewing the trial transcript, Counsel

---

[1]We omit claims asserted within the petition for post-conviction relief and testimony concerning allegations of ineffectiveness that the Petitioner does not assert on appeal.

confirmed that Rachell Copeland, a nurse who treated the victim, testified at trial that the victim told her that the Petitioner was a "drug dealer"and that he disclosed to her during the rape that he had raped another woman. Counsel confirmed that he objected to this statement as hearsay but did not object to it as a violation of Tennessee Rule of Evidence 404(b)'s prohibition of "bad acts" introduced to prove character. He acknowledged that Rule 404(b) may have been the better basis upon which to challenge the testimony but explained that the testimony's suppression was pointless because the victim had already testified that the Petitioner was a drug dealer and that he told her he had raped a woman before.

Counsel testified that Markeitsha Allen, the mother of the Petitioner's child, wished to testify that she had a conversation with the victim, whom she knew as "China," during which she asked the victim whether the Petitioner raped her, and the victim responded, "[N]ot really." Counsel testified that he intended to ask the victim on cross-examination whether she was known as "China" or whether she told Allen she was not raped and, thereby, lay a foundation for Allen to testify that the victim made a prior inconsistent statement. Counsel explained, however, that due to the prolonged nature of the victim's testimony, he forgot to ask these questions of the victim. When he realized his error after the victim had already left the stand, he immediately asked to be allowed to re-call the victim and ask the questions. The trial court denied this request.

Counsel acknowledged that he made a mistake by not questioning the victim about whether she was known as "China," but he testified that, if Allen had actually testified, it would have been a "train wreck." He explained that the State informed him that, if Allen testified about the victim's statement, the victim's mother would testify that what actually happened was that Allen called the victim's home immediately after the attack, asked to speak with the victim, and the victim's mother refused to allow her to speak with the victim, who was "hysterical." The victim's mother would have testified that the conversation between Allen and the victim never occurred. Counsel believed that, even had he remembered to lay a proper foundation for Allen's testimony, the strength of Allen's testimony would likely have been greatly diminished by the victim's mother's testimony.

Counsel recalled that the State presented a great deal of evidence of the victim's extensive injuries, which included graphic photographs and detailed testimony about swelling and bruising to the victim's body.

Counsel testified that he objected to "each and every" enhancement factor at sentencing. Asked whether he thought he made any mistakes during trial, Counsel said the only mistake he made was in not convincing the Petitioner to accept the State's plea offer.

On cross-examination, Counsel testified that he had handled hundreds of criminal

cases by the time he represented the Petitioner. He testified that, because the victim and the Petitioner were acquainted before the attack, identity was not at issue at trial. He confirmed that the Petititioner's DNA was found within the victim's vaginal cavity and that the State put on proof that the victim had been beaten with a fist and a flashlight, suffered a broken jaw, and her hair was pulled out during this attack.

Markeitsha Allen testified that she was not subpeonaed to testify in the Petitioner's trial. She said that, had she been subpeonaed, she would have testified that she called the victim and had they following conversation:

> I asked her did [the Petitioner] do it and she was like, no, not really. I was like if you got raped you would be saying yeah, no[t], not really. She was like, well, he shouldn't of hit me. And I'm going to make him suffer. I'm going to take his child from him because I know he love him and all that stuff. She was like, got a cute little baby and it was good too. She was telling me she was pregnant by him and all that stuff and I was like okay.

Allen testified that she gave the above account to the trial court during a jury-out hearing.

On cross-examination, Allen said her conversation with the victim took place a few days after the alleged attack. She could not recall exactly when she gave her account of the conversation she had with the victim to the trial court, but she believed it was during the trial rather than the preliminary hearing.

The attorney whom the Petitioner's family retained to represent him on direct appeal ("Appellate Counsel") testified that he filed an appellate brief for the Petitioner. He testified that, though he was aware the trial court had applied five enhancement factors to the Petitioner's sentence, he objected to only one of these factors on direct appeal. He explained that he limited his argument to this single enhancement factor because it was the one "that had the strongest basis in the proof." He said any issues surrounding the trial court's application of the other enhancement factors were not "strong enough to raise on appeal." Appellate Counsel emphasized that the trial record was "convoluted" and a "mess" because of contradictions in the victim's testimony.

On cross-examination, Appellate Counsel confirmed that he is certified as a trial specialist by Tennessee and that he has handled at least thirty criminal appeals.

The Petitioner complained that Counsel failed to suppress Copeland's testimony that the Petitioner was a drug dealer and had previously committed rape. He stated Counsel should have laid a proper foundation for Markeitsha Allen to testify in front of the jury. The

7

Petitioner complained that Appellate Counsel should have raised as an issue on appeal the trial court's application of each of the enhancement factors it used to increase the Petitioner's sentence.

At the conclusion of the hearing, the post-conviction court took the matter under advisement and later issued a written order denying relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends the trial court erred when it denied his petition for post-conviction relief because he established by clear and convincing evidence that Counsel was ineffective because he: (1) failed to properly lay a foundation for Markeitsha Allen to testify about the victim's prior inconsistent statement; and (2) failed on direct appeal to advance the argument that the trial court misapplied enhancement factors in addition to enhancement factor (16), abuse of a position of private trust. *See* T.C.A. § 40-35-114(16). The Petitioner also argues the post-conviction court's order denying relief forms an inadequate basis for our review because it does not address his claim that Counsel was ineffective for failing to object to evidence of the Petitioner's prior bad acts. We address each contention in turn.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2009). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2009). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following

two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a [Petitioner] in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d

363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

Appellate counsel is not constitutionally required to raise every issue available to a defendant. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). To be effective, however, counsel must use his professional experience and knowledge to determine what issues to advance and what issues have no merit. *Id*. These decisions winnowing the issues to raise on appeal are generally left to the sound discretion of appellate counsel, so long as those decisions fall within the range of competence expected of attorneys in criminal appeals. *Id*.; *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). If the claim is grounded in the failure of counsel to advance an issue, the reviewing court must therefore determine the merits of the issue. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Carpenter*, 126 S.W.3d at 887. Where an issue is without merit, the petitioner is not entitled to relief.

### A. Failure to Lay a Proper Foundation for Witness Markeitsha Allen to Testify about the Victim's Prior Inconsistent Statement

The Petitioner argues the post-conviction court erroneously concluded he failed to demonstrate prejudice from Counsel's failure to lay a foundation for Allen's testimony because, had Allen testified as to the victim's statement, a "reasonable probability" existed that the Petitioner would only have been convicted of assault, rather than aggravated rape. The State argues that the post-conviction court correctly determined that Counsel's error did not prejudice the outcome of his trial because it based this determination on a thorough analysis of the evidence offered at trial and at the post-conviction hearing.

In its order denying post-conviction relief in this case, the post-conviction court found that Counsel was "negligent and ineffective in his handling" of Allen's testimony that the victim made a prior inconsistent statement denying being raped by the Petitioner. It concluded that Counsel was ineffective for failing to lay a proper foundation for Allen's testimony. The post-conviction court refused to grant relief on this claim, however, because it found that the Petitioner failed to demonstrate that Counsel's error prejudiced the outcome

10

of his trial because: (1) the post-conviction court found Allen's proffered testimony at the post-conviction hearing was "without credibility" because it differed from her proffered testimony at a jury-out hearing at trial; (2) if one credited Allen's testimony, the testimony corroborated the victim's account of being assaulted and having sex with the Petitioner; (3) a "large amount of evidence" supported the victim's account that it was non-consensual sex, such as testimony from police officers and medical personnel that the victim suffered a broken jaw as well as swelling and bruising to her face, head, arms, and legs; and (4) Counsel cross-examined the victim about several other prior inconsistent statements; thus, any failure to address her statement to Allen "would not have made a difference."

According to the post-conviction court's review of the trial transcript in this case, Allen testified at trial during a jury-out hearing that the victim told her that the sex she had with the Petitioner was consensual and "good." When Allen testified at the post-conviction hearing, however, she said the victim told her their sex was consensual but that, because the Petitioner struck her during their sexual encounter, she had accused the Petitioner of rape to make him "suffer." Although the two versions are not in direct contrast, they do support the post-conviction court's finding that Allen "attempted to add an element of vindictiveness [to the victim's accusations], where[as] one did not exist [in her testimony] at the time of the trial." Similarly, because this Court's summary of the trial evidence in this case on direct appeal includes extensive evidence of the victim's severe injuries, the record supports the post-conviction court's finding that extensive evidence was introduced at trial of the victim's severe injuries. Finally, Counsel's testimony supports the post-conviction court's finding that he cross-examined the victim about other prior inconsistent statements she was alleged to have made. Therefore, the record does not preponderate against the post-conviction court's findings of fact. *See Fields*, 40 S.W.3d at 456-57. Further, because a trial judge is to resolve all questions of witness credibility, we will not disturb the post-conviction court's finding that Allen was "without credibility." *See Momon*, 18 S.W.3d at 156.

We agree with the post-conviction court that the Petitioner failed to show by clear and convincing evidence that a "reasonable probability" existed that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the post-conviction court explained in its well reasoned order, many aspects of the State's case against the Petitioner would have rendered Allen's testimony innocuous. First, Allen's post-conviction account of the victim's statement would have corroborated the victim's trial testimony that the Petitioner assaulted her and had sex with her. Second, at trial the State introduced a great deal of evidence of the extensive wounds the victim received from the Petitioner's assault against her. The severe nature of the victim's injuries would have stood in sharp contrast to Allen's claim that the victim said the sex was consensual and only alleged rape because the Petitioner struck her. Finally, because Counsel cross-examined the victim about other prior inconsistent statements she was alleged

11

to have made, his questioning her about the statement she allegedly made to Allen would not have created a "reasonable probability" that the jury would acquit the Petitioner. *See Strickland*, 466 U.S. at 694. In summary, a thorough examination of the trial evidence reveals Counsel's omission caused no "breakdown in the adversary process" that rendered the Petitioner's convictions "unreliable." *See Strickland*, 466 U.S. at 687. As such, the Petitioner is not entitled to relief on this issue.

### B. Appellate Counsel's Failure to Challenge Each Enhancement Factor

The Petitioner claims Counsel was ineffective because he "allowed" the trial court to apply several enhancement factors in violation of *Blakely* because the factors were not found beyond a reasonable doubt by a jury. *See Blakely v. Washington*, 542 U.S. 296 (2004). The Petitioner argues on appeal, however, that Appellate Counsel was ineffective for failing to raise as an issue on direct appeal the trial court's application of several enhancement factors that the Petitioner claims were applied in violation of *Blakely*. He acknowledges that Appellate Counsel challenged, in light of *Blakely*, the trial court's application of enhancement factor (16) but argues Appellate Counsel should also have challenged the trial court's application of the remaining enhancement factors in light of *Blakely*.

The State responds that, because this Court concluded on direct appeal that the trial court lawfully enhanced the Petitioner's sentence based upon at least one properly applied enhancement factor, the Petitioner failed to demonstrate prejudice from Counsel's not objecting to each enhancement factor.

In its order denying relief, the post-conviction court addressed the Petitioner's claim as the Petitioner had framed it in his final amended petition for post-conviction relief. First, crediting Counsel's testimony at the post-conviction hearing, it found that Counsel objected at sentencing to each of the enhancement factors the trial court applied. Based on this finding, the post-conviction court determined that Counsel was not ineffective at sentencing. It also noted that on direct appeal this Court found that, although the trial court misapplied enhancement factor (16), at least one of the remaining enhancement factors was applied correctly and supported the Petitioner's sentence.

We conclude that the Petitioner's claim, whether framed as an objection to Counsel's representation at sentencing or as an objection to Appellate Counsel's representation on direct appeal, does not entitle him to post-conviction relief. We note first that the evidence does not preponderate against the post-conviction court's factual finding that, at sentencing, Counsel argued against the application of each enhancement factor. Thus, based on this finding, we agree that the Petitioner failed to prove by clear and convincing evidence that Counsel was ineffective for failing to object to the application of each enhancement factor

12

at sentencing. *See* T.C.A. § 40-30-110(f). Even were the Petitioner to have properly articulated in his petition for post-conviction relief his contention on appeal that Appellate Counsel was deficient for failing to argue on direct appeal that the trial court misapplied the remaining enhancement factors, he would not be entitled to relief. As the post-conviction court noted, this Court on direct appeal held that, because at least one enhancement factor was correctly applied, the trial court's enhancement of the Petitioner's sentence was lawful. *See Jones*, 2007 WL 4225727, at *9. This Court's conclusion on direct appeal demonstrates that, had Appellate Counsel advanced the issue of the application of the remaining enhancement factors, he would not have gained relief for the Petitioner. *See Kimmelman*, 477 U.S. at 375. Thus, the Petitioner has failed to demonstrate by clear and convincing evidence that he was prejudiced by Appellate Counsel's decision to not argue on direct appeal that each of the Petitioner's enhancement factors were misapplied. *See* T.C.A. § 40-30-110(f). The Petitioner is not entitled to relief on this issue.

### C. Post-conviction Court's Failure to Address the Claim that Counsel Failed to Object to the Introduction of Evidence of the Petitioner's Prior Bad Acts

The Petitioner argues the post-conviction court erred because its written order denying relief did not address his claim that Counsel was ineffective for failing to object to the testimony of Rachell Copeland that the Petitioner was a drug dealer and had confided to her that he had raped someone other than the victim. The Petitioner argues this evidence was introduced in violation of Tennessee Rule of Evidence 404(b)'s prohibition of the use of evidence of "other crimes, wrongs, or acts" to prove action in conformity with a particular character trait.

The State does not address the absence of a finding in the post-conviction court's written order that the Petitioner was not entitled to relief based upon this claim. The State argues Counsel was not ineffective for not objecting to Copeland's testimony because the victim had already testified that, during the attack, the Petitioner claimed to have previously raped a woman.

Tennessee Code Annotated section 40-30-111(b) (2009) provides, "Upon the final disposition of every [post-conviction] petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground." This requirement is mandatory; however, a post-conviction court's failure to comply does not always require reversal of the court's judgment. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); *see also Michael H. Cammon v. State*, No. M2006-01823-CCA-R3-PC, 2007 WL 2409568, at *7 (Tenn. Crim. App., at Nashville, Aug. 23, 2007), *no Tenn. R. App. P. 11 application filed*.

13

"The primary intent of the legislature underlying this requirement is to facilitate appellate review of the lower court's proceedings, and the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable." *Swanson*, 680 S.W.2d at 489. Therefore, a post-conviction court's failure to provide written findings of fact and conclusions of law may be deemed harmless if the post-conviction court orally set forth sufficient findings on the record. *See State v. Higgins*, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987).

The Petitioner is correct that the post-conviction court did not make a specific legal finding that Counsel's failure to object to Copeland's testimony did not constitute ineffective representation. Instead, in its written order denying relief, the post-conviction court made only the following factual findings:

> Petitioner contends that trial counsel was ineffective for failing to object to witness testimony concerning Petitioner's previous crimes and acts in violation of Rule 404(b) of the Tennessee Rules of Evidence. [Counsel] testified that he did not make a Rule 404(b) objection to the testimony because the jury had already heard the information. [Counsel] testified that a 404(b) objection may have been proper if the jury had not already heard the testimony.

At the conclusion of its order, however, the post-conviction court found that "the Petitioner failed to meet [the burden] of proving his allegations of fact by clear and convincing evidence."

In this case, as Tennessee Code Annotated section 40-30-111(b) requires, the post-conviction court set out in its written order the Petitioner's claim that Counsel was ineffective for failing to object to Copeland's testimony based on Rule 404(b) and made several factual findings as to the circumstances surrounding Counsel's decision not to make a Rule 404(b) objection. Our review of the record indicates that the post-conviction court only inadvertently omitted from its written order its determination that, because the jury had already heard the essence of Copeland's testimony directly from the victim, the Petitioner failed to prove prejudice from Counsel not objecting to Copeland's testimony on the basis of Rule 404(b). We conclude that the post-conviction court's findings of fact and ultimate legal finding that the Petitioner failed to prove any of his assertions of ineffectiveness by clear and convincing evidence adequately "facilitates" our review of the Petitioner's claim. *See Swanson*, 680 S.W.2d at 489. We, therefore, will review the issue without remanding for further legal findings.

At trial, Copeland, a nurse, testified that she attended to the victim's injuries after the attack. She recalled that the victim told her that the Petitioner was a drug-dealer and that the

14

Petitioner told her during the attack that he had raped before. At the post-conviction hearing, Counsel testified that he objected to the portion of Copeland's testimony in which she recalled her conversation with the victim. He objected to the testimony as hearsay, rather than as a violation of Tennessee Rule of Evidence 404(b). He testified at trial that he did not believe the admission of Copeland's testimony prejudiced the Petitioner because the jury had already heard the victim testify that the Petitioner told her during the attack that he had raped before. Thus, the evidence does not preponderate against the post-conviction court's factual finding that, by the time Copeland testified to the Petitioner's prior bad acts, the jury had already heard the evidence of these bad acts from the victim's testimony.

We agree that Counsel's failure to gain the suppression of Copeland's testimony did not constitute ineffective assistance of counsel. Counsel objected to the testimony, though on the basis of its being hearsay rather than on the basis of its being tendered in violation of Rule 404(b). Because Counsel was not "constitutionally compelled" to object to Copeland's testimony on the basis of Rule 404(b), we conclude that Counsel's conduct fell within "the wide range of reasonable professional assistance." *See Burger*, 483 U.S. at 794; *also see Burns*, 6 S.W.3d at 462. Further, even were Counsel to have succeeded in suppressing Copeland's testimony, the jury's prior exposure to essentially the same information through the testimony of the victim prevented a "reasonable probability" of the results of the proceeding being different. *See Strickland*, 466 U.S. at 694. Because the evidence does not show either that Counsel was ineffective for not objecting to Copeland's testimony or that Copeland's testimony prejudiced the outcome of the Petitioner's trial, we conclude that the Petitioner failed to prove by clear and convincing evidence that Counsel was ineffective in this regard. *See* T.C.A. § 40-30-110(f). He is not entitled to relief on this issue.

### III. Conclusion

Having reviewed the record and relevant authorities, we conclude that the Petitioner has failed to demonstrate that he received the ineffective assistance of counsel. As such, we affirm the post-conviction court's judgment denying his petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE